IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| JOHN H.H. GRAVES, JAMES R. O. GRAVES AND CORNELIA G. SPAIN, AS CO-TRUSTEES OF THE H.T.N. GRAVES TRUST AND THE REBECCA JACKSON GRAVES TRUST, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 5:12cv065 |
| v. | ) ) | |
| ELIZABETH GRAVES VITU, AND KATHERINE G. FICHTLER, | ) ) ) ) | By: Hon. Michael F. Urbanski<br>United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

In this declaratory judgment action, defendants have moved to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and Rule 12(b)(7) for failure to join a necessary and indispensible party, the joinder of whom will destroy complete diversity between the parties and deprive this court of subject matter jurisdiction. (Dkt. No. 6.) For the reasons set forth below, the motion must be granted, and this case dismissed for lack of subject matter jurisdiction.

I.

This case involves the interpretation of a no-contest clause contained within two trusts, the H.T.N. Graves Trust ("Ted Graves Trust") and the Rebecca Jackson Graves Trust ("Mrs. Graves Trust"). The litigants are the great-grandchildren of Colonel Theodore Clay Northcott, the founder of Luray Caverns. For many years, the descendants of Colonel Northcott have been embroiled in an ongoing struggle over the control and management of the family business, consisting of the Luray Caverns Corporation and other closely held entities associated with it

(hereinafter collectively referred to as "Luray Caverns"). Currently, there are six surviving great-grandchildren of Colonel Northcott and his wife Belle Brown Northcott: John H.H. Graves ("John"), James R.O. Graves ("Rod"), Cornelia Spain ("Cornelia"), Elizabeth Graves Vitu ("Elizabeth"), Katherine Fichtler ("Katherine"), and Rebecca Hudson (collectively the "Graves Children"). Plaintiffs in this case are John, Rod, and Cornelia. Defendants in this case are Elizabeth and Katherine. Rebecca Hudson has not been named in this action.[1]

The saga surrounding control of Luray Caverns does not begin with the current generation. Rather, the family has sparred in state court many times over the last century. Issues involving the distribution of assets and the construction of the trust agreements have been regularly adjudicated in Page County Circuit Court. As this case is simply one skirmish in the complicated and contentious battle that has been waged between the descendants of Colonel Northcott over the distribution of stock and control of Luray Caverns, it is helpful to place the current litigation in its historic context.

Luray Caverns, founded by Colonel Northcott in 1905, is a noted landmark and tourist attraction located in Page County, Virginia. Colonel Northcott and his wife established two trusts during their lifetimes: the Belle Brown Northcott Trust ("the Belle Trust") and Theodore Clay Northcott Trust ("the Colonel Trust"). The validity of these trusts was challenged in the 1920s in Page County Circuit Court, which ultimately upheld the trust's bequest to the Colonel's daughter and her surviving children. After the death of the Colonel and his daughter, the Colonel's grandson, Henry Theodore Northcott Graves ("Ted Graves"), became the beneficiary of these trusts and enjoyed the net income from them during his lifetime. The Belle Trust and the Colonel Trust terminated at the death of Ted Graves in July 2010.

---

[1] In this action, each plaintiff is a resident of Virginia. Defendant Elizabeth is a resident of France, and her co-defendant, Katherine, is a resident of Montana. Rebecca Hudson is a resident of Virginia.

In the early 1950s, Ted Graves became president of Luray Caverns Corporation and held that position from 1952 until 2008. During their lifetime, Ted Graves and Mrs. Graves established two inter vivos trusts, the Ted Graves Trust and the Mrs. Graves Trust, and the property subject to the trusts included certain shares of Luray Caverns Corporation owned personally by Ted Graves, interests in affiliated Luray Caverns entities and other property.[2]

The management of the Belle Trust and the Colonel Trust and control over the business operations of Luray Caverns has caused a great deal of strife between the children of Colonel Northcott's grandson, Ted Graves. During Ted Graves' lifetime, the Belle Trust and the Colonel Trust each had two Co-Trustees. Since 1956, Mrs. Graves has served as one of the Co-Trustees, and Ted Graves has individually selected and nominated each successive Co-Trustee to serve alongside her. Mrs. Graves served continuously until the trusts were terminated at her husband's death. The present scuffle between the children of Ted Graves and Mrs. Graves has its origin in disagreements as to who should serve as Co-Trustees of the Belle Trust and the Colonel Trust.

According to the complaint, the quarrel came to a head in the fall of 2004. At that time, Nathan H. Miller ("Miller"), who had served as Co-Trustee of both the Belle Trust and the Colonel Trust, resigned and filed a series of lawsuits relating to the trusts. Ted Graves and Mrs. Graves, along with plaintiffs in this action, opposed certain of the relief sought by Miller and also sought the appointment of James C. Cropsey ("Cropsey") as Miller's successor Co-Trustee. Katherine and Elizabeth, defendants in this case, opposed Cropsey's nomination as successor. On February 19, 2008, Katherine personally voiced her opposition to Cropsey's nomination, while Elizabeth filed her opposition in writing. The crux of the current dispute stems from the

---

[2] Luray Caverns Corporation issued a total of 494 shares of stock, 484 of which were controlled by the Belle Trust and the Colonel Trust. Ted Graves personally owned the remaining ten shares of stock, seven of which are part of the trust corpus at issue in this litigation. At oral argument, counsel for defendants represented that while the present dispute involved the parties' percentage interest in these seven shares of Luray Caverns Corporation's stock, the sibling's respective interests in other Luray Caverns' entities within the Ted Graves trust was of greater moment.

3

fact that in the interim, on November 17, 2006, and allegedly unbeknownst to defendants Katherine and Elizabeth, the Ted Graves Trust and the Mrs. Graves Trust were amended to include a no-contest clause prohibiting any beneficiary thereunder from opposing the nomination and continuation of a Co-Trustee of the Colonel Trust or the Belle Trust. The no-contest clause reads as follows:

> If any beneficiary under this Trust shall in any way, directly or indirectly, challenge, contest or object to the nomination or selection by the Grantor or his wife, or by any attorney-in-fact for either of them, of a trustee of the trust u/w Belle Brown Northcott, deceased, or of the trust u/w Theodore Clay Northcott, deceased, then and in each such case all provisions for such beneficiary or for his or her issue above contained in this Trust shall be wholly void and ineffectual, and the Trustee is hereby directed to distribute the portion of the Trust Fund to which such beneficiary or his or her issue would have been entitled under the provisions of this Trust in like manner as if such beneficiary and all of his or her issue had predeceased the Grantor.
>
> If any beneficiary under this Trust shall in any way, directly or indirectly, challenge, contest or object to the continuation of Rebecca Jackson Graves as Trustee or a Co-Trustee of the trust u/w Belle Brown Northcott, deceased, or the Trust u/w Theodore Clay Northcott, deceased, or to any action by her as trustee of either trust or seek or attempt to remove, directly or indirectly, Rebecca Jackson Graves as a Trustee of either trust, or institute or prosecute, or be in any way, directly or indirectly, interested or instrumental in the institution, or prosecution, of any action, proceeding, challenge or contest, or give any notice or take any action, for the purpose of such removal or to challenge, contest or object to any action by her as Trustee of either trust, then and in each such case all provisions for such beneficiary or for his or her issue above contained in this Trust shall be wholly void and ineffectual, and the Trustee is hereby directed to distribute the portion of the Trust Fund to which such beneficiary or his or her issue would have been entitled under the provisions of this Trust in like manner as if such beneficiary and all of his or her issue had predeceased the Grantor.
>
> If any beneficiary under this Trust other than Cornelia G. Spain, John H. H. Graves and James R. O. Graves shall in any way, directly or indirectly, institute or prosecute, or be in any way, directly or indirectly, interested or instrumental in the institution or prosecution of, any action or proceeding, or give any notice or take any action, for the purpose of the appointment of a conservator or guardian for the Grantor or his wife, then and in each such case all provisions for such beneficiary or for his or her issue above contained in this Trust shall be wholly void and ineffectual, and the Trustee is hereby directed to distribute the portion of the Trust Fund to which such beneficiary or his or her issue would have been entitled under

4

the provisions of this Trust in like manner as if such beneficiary and all of his or her issue had predeceased the Grantor.

By operation of this clause, plaintiffs contend that Katherine's and Elizabeth's opposition to the nomination of Cropsey as Co-Trustee renders their beneficial interest in the Ted Graves and Mrs. Graves Trust "wholly void and ineffectual."

Despite the opposition by Katherine and Elizabeth, Cropsey was appointed as the successor Co-Trustee of the Belle Trust and the Colonel Trust. In the summer of 2009, Ted Graves and Mrs. Graves petitioned the Page County Circuit Court to appoint Robert Lawler ("Lawler") as an additional Co-Trustee to the Belle Trust and the Colonel Trust. While John, Rod, and Cornelia consented to the appointment, Katherine and Elizabeth challenged it. Shortly before their challenge could be heard, Katherine and Elizabeth were notified of the no-contest clause and withdrew their opposition. Lawler was appointed as an additional successor Co-Trustee of the Belle Trust and the Colonel Trust, but did not qualify as such prior to the death of Ted Graves. Ted Graves' death on July 8, 2010 terminated the Belle Trust and the Colonel Trust.

Upon Ted Graves' death, the disposition of the Belle Trust was disputed, and a lawsuit ensued in Page County Circuit Court. In that case, Katherine, Elizabeth and Rebecca Hudson joined together in a position adverse to Mrs. Graves and their siblings. In a written opinion handed down on August 26, 2011, Chief Judge Thomas J. Wilson, IV held that a remainder interest in the next of kin found in the Belle Trust violated the rule against perpetuities and ordered that the remaining shares in the Belle Trust be given to the Graves Children in equal shares. Graves v. Graves et al., CL10000176-00 (Va. Cir. August 26, 2011). Relying in part on the trail of bread crumbs left by the many years of litigation in Page County, the court also held

that a certain inter vivos transfer of 170 shares to the Belle Trust did not violate the rule against perpetuities and would be distributed equally to the Graves Children.

As a result of Ted Graves' death, Mrs. Graves became the primary beneficiary of the Ted Graves Trust to which the Graves Children were remainder beneficiaries. The Graves Children remained the beneficiaries under the Mrs. Graves Trust. When Mrs. Graves passed away on April 6, 2012, the question of the distribution of the corpus of the trusts arose and spawned the current litigation which seeks to determine whether Katherine's and Elizabeth's actions triggered the no-contest clause of the Ted Graves Trust and the Mrs. Graves Trust, vitiating their beneficial interests.

## II.

The litigation surrounding the control of Luray Caverns in Page County Circuit Court dealt primarily with the Colonel Trust and the Belle Trust until their termination in 2010 at Ted Graves' death.[3] In the current round of litigation, plaintiffs John, Rod, and Cornelia, in their capacities as Co-Trustees of the Ted Graves Trust and the Mrs. Graves Trust, have filed suit against Elizabeth and Katherine for a declaration that defendants, as beneficiaries of their parents' trusts, triggered the no-contest clause contained within each trust and forfeited their shares as beneficiaries. Specifically, plaintiffs allege that Katherine and Elizabeth violated the no-contest clause by opposing the appointment of both Cropsey and Lawler as successor Co-Trustees of the Belle Trust and the Colonel Trust.

On July 26, 2012, defendants filed a motion to dismiss for lack of jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7). Defendants argue that plaintiffs have

---

[3] A brief overview of the online case system of Page County Circuit Court indicates that the Belle Trust and the Colonel Trust have been interpreted by Page County Circuit Court seven times since 1995 (the start date of the electronic records). See CH04000198-00, CL00000047-00, CL09000119-00, CH05000100-00, CH04000199-00, CL00000048-00, CL09000120-00. Rebecca Hudson was a named as a defendant in three of those actions.

failed to join a necessary party, namely Rebecca Hudson, pursuant to Federal Rule of Civil Procedure 19(a)(1). Moreover, defendants contend that since Rebecca Hudson is an indispensible party pursuant to Rule 19(b)(1), the court must join her. As plaintiffs and Rebecca Hudson all are Virginia residents, joinder of Rebecca Hudson will defeat complete diversity of citizenship and deprive the court of subject matter jurisdiction. Therefore, defendants argue that the court should dismiss the action without prejudice to refile it in Page County Circuit Court, where all of the interested parties, including Rebecca Hudson, may be joined.

At oral argument on the motion to dismiss held on October 18, 2012, defendants insisted that Rebecca Hudson is a necessary and indispensible party for four reasons: (1) she is inextricably involved in the contentious battle for control of the Luray Caverns, and the triggering of the no-contest clause by defendants will further reduce her minority position relative to plaintiffs; (2) she has traditionally taken a position adverse to the plaintiffs and cannot be aligned with them in this matter; (3) non-joinder prejudices Rebecca Hudson's ability to protect her own interests; and (4) she will not be bound by the judgment of this court. Plaintiffs respond by contending that: (1) the ultimate disposition of the interests of Katherine and Elizabeth represents complete relief between the parties to this suit; (2) Rebecca Hudson has no pecuniary interest in the interpretation of the no-contest provision, and, indeed, her financial interest increases if the no-contest provision is applied against Katherine and Elizabeth;[4] and (3)

---

[4] Article Five of the Ted Graves Trust and the Mrs. Graves Trust guides the disposition of the various assets of the six children. First, Rebecca Hudson is the recipient of some specific tangible personal property, namely, a gold bracelet and a diamond engagement ring. The other children share "all the rest of the Grantor's personal property." Next, the trust instruments divide the balance of the property held in trust into a Credit Share and a Marital Share. The Grantor's wife had the option of exercising the special power of appointment to direct the disposition of the Credit Share. Mrs. Graves did not. Therefore, 75% of the stock of the closely held corporations, including Luray Caverns Corporation, as may be augmented by the Marital Share, would go to John, Rod, and Cornelia, and 25% of shares of these same companies to Elizabeth and Katherine. Rebecca Hudson retains a 2.5% interest in the residue of the remainder of the Credit Share, as augmented by the Marital Share. If the no-contest clause is triggered, Katherine and Elizabeth will lose the 25% share which will be added to the Credit Share. Ultimately, 97.5% of the 25% share divested from Katherine and Elizabeth will flow to plaintiffs, and 2.5% to Rebecca Hudson. Thus, while

7

Rebecca Hudson's interest in the matter is merely speculative, because she did not oppose any nominees after the no-contest clause was inserted into the Ted Graves and Mrs. Graves Trusts.

At oral argument, defendants indicated their intent to seek to have the no-contest provision declared void as a matter of law. Even if the provision is not deemed to be void, defendants argue that they did not know of the provision until the time of the hearing to appoint Lawler, at which time they withdrew their opposition. Thus, one of defendants' defenses to this action is that any violation was done unintentionally without knowledge of the no-contest clause. In response to defendants' theory of the case, plaintiffs seek to establish that defendants had knowledge of the no-contest clause, specifically through their interactions and communications with Rebecca Hudson. Plaintiffs have issued discovery directed to the issue of Rebecca Hudson's communications with defendants on this subject.

During argument, the court observed that the no-contest clause was broadly worded, encompassing both direct and indirect challenges to the nomination of a Co-Trustee. Should discovery reveal that Rebecca Hudson indirectly opposed the nomination of either Cropsey or Lawler by supporting the position taken by her sisters, her beneficial interest could be in jeopardy. At the hearing on October 18, 2012, counsel for plaintiffs responded to the court's inquiry by stating that Rebecca Hudson's interest was "perhaps" at risk. Following the hearing, plaintiffs sought to eliminate this potentiality by filing a stipulation that if the court retained jurisdiction of this matter and adjudicated it on the merits, plaintiffs, in their capacities as Co-Trustees and in their individual capacities, would not assert that Rebecca Hudson forfeited any interest in either the Ted Graves Trust or the Mrs. Graves Trust.

---

both plaintiffs and Rebecca Hudson stand to gain if Katherine and Elizabeth are divested of their trust interests, the relative gain to plaintiffs dwarfs that of Rebecca Hudson.

This stipulation does not cure the insoluble problem posed by litigating this case without the joinder of Rebecca Hudson. While the cleverly conceived stipulation may serve to immunize Rebecca Hudson for any past breaches of the no-contest clause, it does not eliminate her interest in the outcome of this lawsuit for two reasons. First, Rebecca Hudson historically has allied herself with Katherine and Elizabeth, and, if plaintiffs prevail in reducing their siblings' interest in Luray Caverns by means of the no-contest clause, Rebecca Hudson would find herself even more isolated. Second, because Rebecca Hudson's share of the residue is so small, 2.5%, the elimination of Katherine and Elizabeth would strengthen the majority ownership position of plaintiffs, further reducing Rebecca Hudson's relative interest.

## III.

Under Rule 12(b)(7) of the Federal Rules of Civil Procedure, an action may be dismissed for failure to join an indispensable party under Rule 19. Defendants, as the moving party, bear the burden of demonstrating entitlement to dismissal under Rule 19 and must "show that the person who was not joined is needed for a just adjudication." Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 92 (4th Cir. 2005) (internal citations omitted).

Rule 19 sets forth separate tests for determining whether a party is necessary and indispensible. Owens–Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir.1999). The Fourth Circuit has noted:

> It is a two-step inquiry in which courts must first ask whether a party is necessary to a proceeding because of its relationship to the matter under consideration pursuant to Rule 19(a). If a party is necessary, it will be ordered into the action. When a party cannot be joined because its joinder destroys diversity, the court must determine whether the proceeding can continue in its absence or whether it is indispensable pursuant to Rule 19(b) and the action must be dismissed.

Id. (internal citations omitted). While "[c]ourts are loath to dismiss cases based on nonjoinder of a party," dismissal is warranted "when the resulting defect cannot be remedied and prejudice or

9

inefficiency will certainly result." Id. at 441. Nonetheless, the "decision [to dismiss] must be made pragmatically, in the context of the substance of each case, rather than by procedural formula, by considering the practical potential for prejudice to all parties, including those not before it." Id. (internal citations omitted). See also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of South Carolina, Inc., 210 F.3d 246, 250 (4th Cir. 2000). Thus, the trial court's considerations regarding the joinder of nonparties must be case specific and fact specific. Simply put, "[w]hen an action will affect the interests of a party not before the court the ultimate question is this: Were the case to proceed, could a decree be crafted in a way that protects the interests of the missing party and that still provides adequate relief to a successful litigant?" Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915, 918 (4th Cir. 1999).

### A.

The court must first consider whether Rebecca Hudson is necessary, or under the current version of the rules, "required,"[5] because of her relationship to the matter under consideration. Fed. R. Civ. P. 19(a)(1). A party is required if, without her, (1) the court cannot accord complete relief among the existing parties, or (2) the party (A) is so situated that disposing of the action in her absence may, as a practical matter, impair or impede her ability to protect her interest, or (B) leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations. Fed. R. Civ. P. 19(a)(1).

Rebecca Hudson is required as a party to this litigation because permitting the action to proceed without her may impair her ability to protect her interests. As counsel for plaintiffs recognized at the hearing, Rebecca Hudson "perhaps" would be in jeopardy of losing her interest in the trusts if discovery revealed, consistent with her historic alliance with Katherine and

---

[5] The 2007 Amendments to Rule 19(a) replaced the word "necessary" with the word "required." The change in words was stylistic and did not affect the substance or operation of the rule. See Republic of the Phillipines v. Pimentel, 553 U.S. 851, 855-56 (2008).

10

Elizabeth, that she provided indirect support to her sisters' challenge to the Co-Trustee nominations.  In that case, Rebecca Hudson plainly would have an interest in the outcome of this litigation and any determination the court makes as to the validity of the no-contest clause.  Plaintiffs cleverly seek to sidestep this issue by stipulating that they will not seek to enforce the no-contest clause against Rebecca Hudson.  But the immunity afforded by this litigation tactic does not render Rebecca Hudson a disinterested bystander to this litigation.  For years, Rebecca Hudson has allied herself with Katherine and Elizabeth in the family dispute over control of Luray Caverns.  Indeed, the complaint acknowledges that "Becca [Rebecca Hudson], Katherine and Elizabeth generally took adverse position to their parents with respect to various issues related to the Luray Caverns Corporation."  Compl. ¶ 15.  Abolition of Katherine's and Elizabeth's trust interests is the purpose of this lawsuit, and a victory by plaintiffs would reduce their voice in the management and control of Luray Caverns and erode the historic support provided to Rebecca Hudson by her sisters in the war that has waged over the family business.  Plaintiffs argue that Rebecca Hudson stands to financially gain if the no-contest provision is triggered by Katherine's and Elizabeth's actions, but this argument misses the point.  While it is true that Rebecca Hudson's actual monetary interest will increase ever so slightly if plaintiffs prevail, any increase pales in comparison to the increase in control plaintiffs would enjoy if Katherine's and Elizabeth's trust interests are vitiated.  In short, permitting this case to continue without Rebecca Hudson's presence may as a practical matter affect her ability to protect an "interest relating to the subject of the action," Rule 19(a)(1)(B)(i),  as a victory by plaintiffs would strengthen the hand of the interests she has historically opposed and weaken the position of her historic allies.

In addition, as a nonparty, Rebecca Hudson would not be bound by any judgment rendered in this case and could, should she so desire, bring a state court action on the same grounds yielding the possibility of inconsistent results.

**B.**

Because Rebecca Hudson and the three plaintiffs are Virginia residents, her joinder would defeat complete diversity and thus the subject matter jurisdiction of the court. As such, Rebecca Hudson's joinder is not feasible under Rule 19(a). The court therefore turns to Rule 19(b). Four factors must be considered in determining whether "in equity and good conscience" this action should be dismissed for non-joinder of Rebecca Hudson: first, to what extent a judgment in Rebecca Hudson's absence might be prejudicial to her interest and the interests of the existing parties; second, the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in Rebecca Hudson's absence will be adequate; and fourth, whether plaintiffs will have an adequate remedy if this action is dismissed for non-joinder of Rebecca Hudson. This "Rule 19(b) analysis is not mechanical; rather it is conducted in light of the equities of the case at bar." Schlumberger Indus. Inc., v. Nat'l Surety Corp., 36 F. 3d 1274, 1286 (4th Cir. 1994).

First, an analysis of this case under the first and third factors of Rule 19(b) – the extent to which a judgment rendered in Rebecca Hudson's absence might prejudice her or the existing parties, or be adequate – addresses many of the same concerns as discussed above under the Rule 19(a)(1)(B)(i) analysis. Owens–Illinois, 186 F.3d at 441; see, e.g., OBOWU Dev. Union USA, Inc. v. Igwe, BPG-10-3554, 2012 WL 4324896 (D. Md. Sept. 18, 2012). Any disposition of this

case rendered in the absence of Rebecca Hudson would be inappropriate given her inability to protect her interests in the outcome of this lawsuit.

With regard to Rule 19(b)'s second factor, "the extent to which any prejudice could be lessened or avoided" by modifying the relief or the judgment in the case, this court's determination as to the validity of the no-contest provision and its application to the actions of Katherine and Elizabeth undoubtedly will impact Rebecca Hudson. Given the historic interests of the parties, the nature of this case, and the relief sought, the court cannot craft a judgment without affecting Rebecca Hudson's rights. The court frankly cannot conceive of any plausible remedy to avoid or lessen the risk of prejudice other than joining Rebecca Hudson in this action. See, e.g., Owens–Illinois, 186 F.3d at 442 (observing "it is hard to see how the district court could have tailored a remedy to lessen or avoid the potential for prejudice in this case [other than joining non-diverse plaintiffs]" where non-diverse plaintiffs were subject to contractual arbitration provision, and "in order to reach a judgment on the merits of the Petition to Compel Arbitration, the district court could not have avoided addressing the validity and applicability of the [contractual] arbitration provision").

The fourth factor is concerned with the interest of the courts and the public in complete, consistent, and efficient settlement of controversies. Notable in this regard is the fact that, absent joinder of Rebecca Hudson, any judgment in this case would not be binding on her, and she would be free to litigate the same issue in state court. Piecemeal resolution of the latest chapter of this saga is not only inefficient, but it also could yield inconsistent results. Moreover, these parties have been warring with each other over the interpretation of various trust instruments and the control of Luray Caverns for years in Page County Circuit Court. This is a state law matter,

13

and the plaintiffs' effort to invoke federal diversity jurisdiction by leaving out an interested party, Rebecca Hudson, is unavailing.

In sum, consideration of the Rule 19(b) factors supports a finding that Rebecca Hudson is an indispensable party, and the court cannot, "in equity and good conscience," allow this action to proceed in her absence. Fed. R. Civ. P. 19(b).

## IV.

Because Rebecca Hudson is a necessary and indispensable party to this action, her joinder is mandated under Rule 19. Rebecca Hudson's joinder as a defendant in this case, however, destroys complete diversity of citizenship, the only basis for this court's subject matter jurisdiction. Therefore, defendants' motion to dismiss this action without prejudice must be granted. An appropriate order will be entered this day.

Entered: February 7, 2013

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge